UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER ROBINSON,                    Case No. 14-11987

              Plaintiff,                 Linda V. Parker
v.                                       United States District Judge

STEPHEN ANDREWS, *et al.*,               Michael Hluchaniuk
                                         United States Magistrate Judge
              Defendants.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANTS,' THE
MICHIGAN DEPARTMENT OF CORRECTIONS, MICHELE SPIVEY
AND CHERYL EVANS' MOTION TO DISMISS [DKT. 45] KYRA
BENNETT, MICHAEL HUGES, JOHN RUBITSHUM, AND RYAN
SMITH'S MOTION TO DISMISS OR ALTERNATIVELY MOTION FOR
SUMMARY JUDGMENT [DKT. 62] AND JOAN YOUKINS'
MOTION TO DISMISS [DKT. 74]**

## I.    PROCEDURAL HISTORY

On May 19, 2014, plaintiff Christopher Robinson, an inmate incarcerated by

the Michigan Department of Corrections and currently confined at the Carson City

Correctional Facility in Carson City, Michigan, brought this action under 42

U.S.C. § 1983, claiming a violation of his rights under the Fourth, Eighth and

Fourteenth Amendments of the United States Constitution.  (Dkt. 1).  Plaintiff

filed an Amended Complaint on July 2, 2014, adding two defendants.[1]   (Dkt. 18).

_____

[1] In amending his Complaint, Plaintiff added parole agent Kyra Bennett, and police
officer, Jim Maudlin.  (Dkt. 18, at 33).

On September 10, 2014, District Judge Linda V. Parker referred this matter to the undersigned for all pretrial proceedings. (Dkt. 40).

On September 25, 2014, defendants the Michigan Department of Corrections ("MDOC"), Michele Spivey and Cheryl Evans (together "MDOC defendants") filed a motion dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (Dkt. 45). The MDOC defendants contend that plaintiff's claims against them are time-barred because plaintiff failed to commence an action within the applicable limitations period. The MDOC defendants alternatively argue that plaintiff's claims against them in their official capacities are barred by Eleventh Amendment immunity. As such, the MDOC defendants seek an order dismissing them from the litigation and assessing a litigation strike against plaintiff pursuant to 28 U.S.C. § 1915(g). On November 4, 2014, plaintiff filed a response to the MDOC defendants' motion to dismiss.[2] (Dkt. 63).

On October 31, 2014, defendants Kyra Bennett, Michael Huges, John Rubitshum, and Ryan Smith filed a motion to dismiss, or alternatively for summary judgment. (Dkt. 62). This group of defendants assert various theories that demand dismissal in their favor. Plaintiff responded on December 8, 2014.

---

[2] On November 12, 2014, co-defendants Stephen Andrews, Shawn Booth, the Pittsfield Township Police Department and Jim Maudlin filed a reply to plaintiff's response to defendants' motion to dismiss (Dkt. 45). (Dkt. 68). In it, co-defendants pointed out that plaintiff had made "conclusory and untrue statements" regarding defense counsel's alleged failure to address issues that plaintiff had raised in his Amended Complaint. Co-defendants, however, provided no substantive response to the motion.

(Dkt. 82).

On December 2, 2014, defendant Joan Youkins filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b).  (Dkt. 74).  Pursuant to Fed. R. Civ. P. 10(c), Youkins asks the court to adopt and incorporate by reference the MDOC defendants previously filed motion and brief.  (Dkt. 45).  Plaintiff responded on March 3, 2015.  (Dkt. 112).

The three motions are now ready for report and recommendation.  For the reasons set forth below, the undersigned **RECOMMENDS** that the MDOC defendants' (the Michigan Department of Corrections, Michele Spivey and Cheryl Evans) motion to dismiss (Dkt. 45) be **GRANTED**, that defendants Kyra Bennett, Michael Huges, John Rubitshum, and Ryan Smith's motion to dismiss or alternatively for summary judgment (Dkt. 62) be **GRANTED**, and that Joan Youkins' motion to dismiss (Dkt. 74) be **GRANTED**.  The court also recommends that the moving defendants be dismissed with prejudice.

## II.    FACTUAL BACKGROUND

Plaintiff was convicted in 1989 by a Washtenaw County jury of first degree criminal sexual conduct ("CSC").  (Dkt. 18, Pg. ID 221).  Plaintiff was paroled on April 20, 2004.  (*Id*.)  One year later, on April 20, 2005, plaintiff was arrested at his parole office in Ann Arbor, Michigan for an alleged parole violation for not registering as a sex offender on two different dates, the first time on January 15,

2005, and again on April 15, 2005. (*Id*.)

Plaintiff alleges that Washtenaw County probation officer supervisor Michele Spivey prepared a parole violation report on April 22, 2005. (Dkt. 18, Pg. ID 221). However, plaintiff claims that Spivey made a number of procedural errors and false statements in conjunction with the parole report. (*Id*.) Some of these errors included the fact that plaintiff had failed to register as a sex offender, yet plaintiff claims that he was under no legal obligation to do so. (*Id*.) Plaintiff specifically claims that there were no special conditions for him to register as a sex offender while he was on parole. (*Id*. at 222). Rather, plaintiff avers that the parole board's "Order for Parole" (form CAX 119) is only signed on pages two and four, while pages one and three remain unsigned. (*Id*.) Plaintiff claims that for conditions of parole to be enforceable, the chairperson must sign the appropriate page of the conditions of parole. (*Id*.) Plaintiff claims that the parole chairperson did not sign the page requiring him to register as a convicted sex offender while on parole. Moreover, plaintiff claims that his parole was deferred while he was attending and completing sex offender therapy, therefore, he was under no obligation to register. (*Id*. at 223). Plaintiff avers that requiring him to register as a sex offender while completing sex offender therapy would violate his constitutional rights. (*Id*.)

Plaintiff further claims that Spivey had an obligation to complete a parole

violation worksheet before arresting him on charges of failing to register as a sex offender and she failed to do so, a violation of his due process rights. (*Id*. at 225). Jackson County parole agent Cheryl Evans completed a supplemental parole revocation report on April 27, 2005. (Dkt. 18, at Pg. ID 225). The report indicates that plaintiff should have been served with his parole violation charges within five calendar days of his arrest, but he was not. (*Id*.)

Plaintiff also claims that defendants made procedural errors when they determined that he failed to register as a sex offender. Spivey and her supervisor David Beaty made recommendations to return plaintiff to prison, but it was their "boss" Joseph Gonzalez, who made the final decision to send plaintiff back to prison for not registering as a sex offender under State and federal law on January 15, 2005. (*Id*. at 225-26). Plaintiff claims that the CFJ 226 form was not signed by Gonzalez, but requires his authorized signature. (*Id*.) On May 2, 2005, the deputy director of field administration, Joan Youkins, issued a parole violation warrant under oath. (*Id*. at 226). Plaintiff contends that this warrant is required for the parole revocation process. (*Id*.) The parole violation date states that on April 18, 2005, plaintiff violated parole, however the parole revocation report prepared by Spivey, notes a violation date of January 18, 2005. (*Id*. at 226). Plaintiff also contends that the warrant issued by Youkins did not contain the required identification code. (*Id*.) Plaintiff claims that these discrepancies show

5

that the warrant issued by Youkins is facially defective and forged. (*Id*.) Plaintiff was found guilty of violating his parole for failing to register as a sex offender and was returned to prison.

Plaintiff alleges that after MDOC was made aware that he was serving a "void" sentence he was re-paroled on May 18, 2011, after serving six and one-half years. (Dkt. 18, at Pg. ID 227). Upon re-parole, all six pages of the "Notice of Parole" (form CAX 119) were signed and required plaintiff to register as a sex offender and participate in sex offender therapy while on parole. (*Id*.) Plaintiff avers that he completed sex offender therapy while on re-parole at Catholic Social Services ("CSS"), after which he did not require further treatment. Despite this, plaintiff claims that his parole agent, Kyra Bennett, and her supervisor, Tanzi Tabb, forced plaintiff to return to sex offender therapy. (*Id*.) Plaintiff claims that Bennett wrongly assessed plaintiff's compass score as being "high" and a "high risk" to society. (*Id*. at 230). Plaintiff alleges that Bennett and Tabb threatened him that if he did not return to sex offender therapy they would send him back to prison, and Bennet indicated that she would have him "killed if [plaintiff] tried to sue her." (*Id*. at 228).

Plaintiff also indicates that he had to wear a GPS monitoring device as a condition of his re-parole. (*Id*. at 228). He was confined to his house on the weekends and was only able to leave the house on weekdays from 8:00 AM until

6

1:00 PM. (*Id*.)  Plaintiff claims that parole agent Bennett got him fired from two jobs because she refused to clear extra hours for plaintiff to work. (*Id*.)  Plaintiff also claims that Bennett called his employers or potential employers and told them to not hire him due to his prior criminal sexual conduct conviction. (*Id*. at 229).

Plaintiff also alleges that Catholic Social Services ("CSS") and MDOC were in violation of the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1320d *et seq*., because plaintiff claims that he never signed a consent or release for CSS to release his personal information to the MDOC. (Dkt. 18, at Pg. ID 230).  Plaintiff claims that CSS therapist, Luanne Reaume, terminated him from the sex offender therapy program when plaintiff confronted her about why he was not given a consent form. (*Id*.)

Following his termination from CSS, according to plaintiff, parole agent Bennett "threatened" him that he needed to enroll in another sex offender therapy class within one week, or she would send him back to prison. (*Id*. at 231). Plaintiff claims that he found a new class, however, he was unable to pay for the class because parole agent Bennett would not approve additional hours on plaintiff's GPS. (*Id*.)  As a result, plaintiff had to borrow money for his sex offender therapy classes.  During this same time, plaintiff's insurance had also run out. (*Id*.)  So, plaintiff was not eligible for insurance to cover therapy until the next quarter. (*Id*.)  On April 19, 2013, plaintiff indicates that he contacted his new

7

therapist and informed him that he could no longer afford to pay for his sex offender therapy classes.

On April 23, 2013, plaintiff claims that he went to report to parole agent Bennett at the Huron Valley Women's Prison in Ypsilanti, Michigan where the parole office is located. (*Id*.) At this time, parole agent Michael Huges arrested plaintiff. (*Id*.) Plaintiff alleges that Huges slammed his face down on the desk and was yelling very loudly. (Dkt. 18, at Pg. ID 232). Huges was screaming, "Do you fucking hear me?" over and over into plaintiff's ear. (*Id*.) Plaintiff did not move or say a word. (*Id*.) Huges placed cuffs on plaintiff to the point where plaintiff's hands and feet went numb. (*Id*.) Plaintiff pleaded with Huges and Bennett to loosen the cuffs, but they both refused. (*Id*.) Plaintiff also asked Huges and Bennett to contact health care, but again they both refused. (*Id*.) At this point, plaintiff had a panic attack; he reported lying on the floor face down, having trouble breathing, and was unable to get into a seated position. (*Id*.) Supervisor Tabb then called the police and officers Stephen Andrews and Jim Maudlin from the Pittsfield Police Department arrived. (*Id*. at 233).

When officers Andrews and Maudlin arrived, plaintiff was still on the ground trying to regain his breath. (*Id*.) Plaintiff informed officer Andrews that he was having difficulty breathing and that his hands and feet were numb because the cuffs were applied too tightly. (*Id*.) Notwithstanding, officer Andrews pulled

on the cuffs causing more pain.  Officer Andrews picked plaintiff up off the floor and slammed him back down, causing more pain and a cut under plaintiff's chin. (*Id*.)  Plaintiff claims that he never caused a threat to the officers as he was already in handcuffs when they arrived at the parole office.  When plaintiff asked officer Maudlin why he allowed his partner to assault him, officer Maudlin said: "it was not something he would have done, but everyone is different."  (*Id*.)

An ambulance came to the parole office to transport plaintiff to the hospital to receive six or seven stitches.  (Dkt. 18, at Pg. ID 234).  Plaintiff avers that the parole agents and officers interfered with ambulance personnel in receiving the medical treatment that he needed in order to cover up the assault that officer Andrews perpetrated upon plaintiff.  (*Id*.)  Instead of being transferred to a hospital, plaintiff was treated at the health care unit within the Huron Valley Women's prison.  (*Id*. at 235).  Plaintiff claims that the nurses who treated him were not medically trained or authorized to perform the procedure of suturing his wound.  Moreover, the procedure left him disfigured with a large scar.

After being treated, plaintiff was transferred to Jackson intake prison for a parole violation of not being in compliance with completing sex offender therapy. (Dkt. 18, at Pg. ID 235).  The officers at Jackson were told that plaintiff was a "trouble maker" so they, too, refused to properly treat plaintiff's injuries.  (*Id*.)

Plaintiff also claims that parole agent Bennett's parole violation report

contained several inaccuracies, false statements, false evidence and false

violations.  For example, plaintiff contends that agent Bennet accused him of

being in possession of a cellular phone in violation of a condition of his parole to

not be in possession of photo equipment.  The parole violation report indicated

that Bennett searched plaintiff's vehicle and that she found a cellular phone with

camera access.  Plaintiff claims that Bennett did not have probable cause to search

his vehicle and that the vehicle and the phone belonged to his mother.  (*Id*. at 237).

The parole violation report also indicated that plaintiff failed to register as a sex

offender, register his address quarterly, or attend sex offender therapy, all in

violation of plaintiff's parole.  Plaintiff claims that agent Bennett made these

claims in retaliation for plaintiff's lawsuit against the MDOC.  Plaintiff claims that

agent Bennett deliberately left her name off the parole violation report, instead

typing the name "Ryan P. Smith," who, according to plaintiff did not exist as a

parole supervisor at the time of the incident in question.  (*Id*. at 238).  Further, the

parole violation worksheet has area manager, James Robertson's signature,

however, plaintiff indicates that Robertson cannot be located and there is a

possibility that this individual does not exist.  (*Id*.)

In securing a warrant for plaintiff's arrest, Shawn Booth was the

complaining witness, however, plaintiff contends that Booth did not have personal

knowledge of the facts of the case.  Further, plaintiff claims that the Complaint

was not endorsed by a prosecutor or sworn out by a judge or magistrate. Nevertheless, a warrant was issued on May 10, 2013.

On June 6, 2013, plaintiff was transported to the Washtenaw County jail to be arraigned on one count of assaulting, resisting, and obstructing relating to the April 23, 2013 incident at Huron Valley Women's prison. (Dkt. 18, at Pg. ID 239). Plaintiff claims that there were numerous inaccuracies in the police report completed by officer Andrews–for example, officer Andrews claimed that the reason he used force on plaintiff was because he feared escalation of violence. However, plaintiff says that he was already secured in handcuffs and on the floor when officer Andrews arrived. Moreover, officer Andrews said that his partner Jim Maudlin participated in securing plaintiff on the ground. However, officer Maudlin testified at trial that he was not present when the assault took place and that he did not assist in any way with securing plaintiff on the ground. Plaintiff alleges that officer Andrews initiated false charges against him to cover up for the assault that Andrews committed.

Plaintiff's Amended Complaint indicates that he is suing defendants in their official and individual capacities for violations of the Fourth, Fourteenth, and Eighth Amendments. Plaintiff, however, does not indicate what type of relief he seeks.

11

## III.   PARTIES' ARGUMENTS

Defendants the Michigan Department of Corrections ("MDOC"), Michele Spivey, Cheryl Evans, Joan Youkins, Michael Huges, Ryan Smith, John Rubitshum, and Kyra Bennett have brought three separate motions to dismiss or alternatively for summary judgment, however, they raise similar issues in seeking the court's relief under Fed. R. Civ. P. 12(b) and/or Fed. R. Civ. P. 56.

### A.   Defendants' Arguments

#### 1.   Sovereign Immunity (All Defendants)

Defendants claim that the Eleventh Amendment, absent consent, bars a lawsuit against the State:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United Stated by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI.   The Supreme Court has held that the Eleventh Amendment's fundamental principles of sovereign immunity negate federal exercise of jurisdiction over lawsuits by citizens against their own states as well. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984); *Mumford v. Basinski*, 105 F.3d 264, 267 n.3 (6th Cir. 1997).   Moreover, claims against the Michigan Department of Corrections are barred by the Eleventh Amendment. *Abick v. Michigan*, 803 F.2d 874, 876-77 (6th Cir. 1986).

12

All defendants argue that a lawsuit against State employees in their official capacities is tantamount to suing the State itself and must be dismissed on the basis of Eleventh Amendment immunity. *See Brandon v. Holt*, 469 U.S. 464, 471 (1985). Here, defendants claim that they are employees of the State of Michigan who acted in their official capacities. The State of Michigan did not consent to the lawsuit and defendants, therefore, they enjoy sovereign immunity in their official capacities.

2.      Statute of Limitations (Spivey, Evans, Youkins, Rubitshum)

Defendants Spivey, Evans, Youkins and Rubitshum argue that federal courts apply the statute of limitations to claims brought pursuant to 42 U.S.C. § 1983. *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-81 (6th Cir. 1990). In Michigan, the statute of limitations for filing a civil rights action pursuant to 42 U.S.C. § 1983 is three years. Mich. Comp. Laws § 600.5805(10).

In his Amended Complaint, plaintiff alleges that Washtenaw County Probation Office Supervisor Michele Spivey authored a false parole revocation report on April 22, 2005. (Dkt. 18, at 221). Plaintiff also alleges that Jackson County Parole Officer Cheryl Evans prepared a supplemental parole violation report on April 27, 2005, but failed to serve it on him within the 5-day period set forth in MDOC policy. (*Id.* at 225). Plaintiff alleges that Deputy Director of Field Administration Joan Youkins issued a parole violation warrant without an

13

identification code on May 2, 2005. (*Id*. at 226). And, although not entirely clear, it appears that plaintiff alleges that Rubitshum signed a form approving a special condition of parole in April of 2004, requiring plaintiff to attend sex offender therapy. (*Id*. at 227).

Defendants argue that unless plaintiff can take advantage of some tolling provision, his Amended Complaint, which was filed nine years and one month after the parole violations reports were issued, is time-barred.

Defendants point out that incarceration is no longer recognized as a disability and therefore does not toll the statute of limitations. *See* Mich. Comp. Laws § 600.35851(a). Moreover, defendants state that plaintiff cannot take advantage of the tolling provision applicable during the time period in which administrative remedies are being pursued or exhausted, given the more than nine-year time frame. *Brown v. Morgan*, 209 F.3d 595, 596 (6th Cir. 2000).

### 3. Personal Involvement (Smith)

Defendant Smith argues that to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitutiton and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of State law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Further, a plaintiff must make a showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S.

362 (1976); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995). The acts of

one's subordinates are not enough, nor can supervisory liability be based upon the

mere failure to act. *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Summers

v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Liability under § 1983 must be based

on active unconstitutional behavior, and cannot be based upon a mere "failure to

act." *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing *Salehpour v.

University of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 119 S. Ct.

1763 (1999)).

Defendant Smith also claims that "[b]ecause vicarious liability is

inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each

government-official defendant, through the official's own individual actions, has

violated the Constitution." *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Moreover, in making this determination, legal conclusions disguised as factual

conclusions are not sufficient to withstand a motion to dismiss. *Id.* at 678.

Plaintiff admits in his Amended Complaint that although Smith's name was

typed on his parole violation report, he later learned that "there was no Ryan P.

Smith as Parole Supervisor . . . at the time of this incident." (Dkt. 18, at 22).

Defendant Smith claims that plaintiff has not made any factual allegations

showing Smith's personal involvement in the complained-of-facts. As a result,

Smith is entitled to dismissal.

4.    Failure to Exhaust Administrative Remedies (Huges & Bennett)

Defendants Huges and Bennett contend that plaintiff has not properly exhausted his Amended Complaint allegations as to them because he did not properly complete the grievance process regarding the issues raised against them. (Dkt. 62, at 20). Here, the administrative process applicable to plaintiff's claims is governed by MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007).

Plaintiff alleges that after he was paroled in 2011, parol agent Bennett forced him to attend sex offender therapy and threatened to violate his parole if he did not attend. (Dkt. 18, at 227-228). Plaintiff also alleges that parole agent Bennett would call potential employers and tell them not to hire plaintiff because of his prior criminal sexual conduct convictions, or that she would refuse to change his curfew hours so that he could obtain or maintain employment. (*Id*.) Plaintiff also alleges that defendant Huges used excessive force when he arrested him on April 19, 2013, including putting handcuffs on too tight. (Dkt. 18, at 231-232).

Despite these allegations, defendants aver that plaintiff has not filed a step III grievance appeal since 2010, which is required by MDOC Policy Directive 03.02.130. (*See* Dkt. 62-2). Because plaintiff has not completed the grievance

16

process prior to filing this lawsuit, defendants say that he has failed to properly exhaust his administrative remedies. *See Woodford v. Ngo*, 548 U.S. 81 (2006). Furthermore, *Jones v. Bock*, 549 U.S. 199 (2007), reiterated the requirement of *Woodford* that "to properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (internal citation omitted). For these reasons, parole agents Huges and Bennet argue that they are entitled to summary judgment.

      B.      <u>Plaintiff's Arguments</u>

      1.      In Response to MDOC Defendants & Youkins' Motions

Plaintiff restates many of the facts in his Amended Complaint and that the undersigned previously outlined in the factual background section above. Specifically in response to the arguments made in defendants' motion to dismiss and/or motion for summary judgment, plaintiff first argues that his claims against defendants are not time-barred. On this point, plaintiff contends that he would have been discharged from parole on April 20, 2006. (Dkt. 63, at Pg. ID 638). However, plaintiff claims that his original sentence has not been invalidated and that he is serving a consecutive sentence to his original criminal sexual conduct sentence and unless and until his parole is completed successfully, his time to file

17

an action in federal court is not time-barred. *See Arkin v. Distributing Co. v. Jones*, 792 N.W.2d 772, 288 Mich. App. 185 (2010). Plaintiff claims that he was re-paroled on May 18, 2011, and this lawsuit was filed on May 19, 2014; however, plaintiff claims that he mailed the lawsuit before the time of limitations had passed. (Dkt. 112, at Pg. ID 1464).

Plaintiff also argues that Eleventh Amendment immunity does not apply in this case. Plaintiff restates that the State officials here, Spivey, Evans and Youkins, acted under color of State law, violated his clearly established constitutional rights and are therefore not entitled to sovereign immunity as a matter of law. *See Scotto v. Alemenas*, 143 F.3d 105 (2d Cir. 1998).

> ### 2.    In Response to Defendants Rubitshum, Smith, Bennett and Huges' Motion

In response to the motion to dismiss (or alternatively motion for summary judgment) filed by defendants Bennett, Huges, Rubitshum, and Smith, plaintiff again rehashes the facts, but fails to provide much substance in response to defendants' arguments. (Dkt. 82). Twenty-six of plaintiff's 28-page brief restates the facts of his Amended Complaint. (*Id*.) In response to defendants' dismissal arguments, plaintiff generally contends that defendants should not be granted immunity because they have not addressed any of plaintiff's claims, and have not provided the court with any undisputed factual claims. (Dkt. 82, at 27). Plaintiff

asserts that as a result of defendants' conspiracy to violate his civil rights, he

suffers from facial and hand pain, and mental and psychological trauma.  (*Id.* at

243-244).

## IV.    ANALYSIS & CONCLUSIONS

### A.    Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must first

comply with Rule 8(a)(2), which requires "'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant

fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 127 S. Ct. 1955, 167 L. Ed. 2d 929

(2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80

(1957)). A plaintiff is also obliged "to provide the grounds of his entitlement to

relief," which "requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do." Association of

*Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007)

(quoting *Twombly*, 550 U.S. at 555 (citations and internal quotation marks

omitted)). And, while a complaint need not contain "detailed" factual allegations,

its "[f]actual allegations must be enough to raise a right to relief above the

speculative level on the assumption that all the allegations in the complaint are

true." *Id.* (quoting *Twombly*, 550 U.S. at 555 (citation and internal quotation marks

19

omitted)); *see also League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (the factual allegations in a complaint need not be detailed but they "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief.").

The Sixth Circuit recognized that in *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007), "a case decided just two weeks after *Twombly*, the Supreme Court clarified *Twombly* by holding that a prisoner bringing a § 1983 claim against his captor is not required to state [s]pecific facts in their complaint; and *Twombly* itself suggests that its holding may be limited to cases likely to produce sprawling, costly, and hugely time-consuming litigation." *U.S. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (citations and internal quotation marks omitted). The Sixth Circuit applied a more stringent pleading standard in *U.S. v. Ford* because a fraud claim was involved, which requires the application of the heightened pleading standard set forth in Rule 9(b), rather than the more liberal pleading standard found in Rule 8(a)(2). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (citation omitted). Thus, when applying *Twombly*, except as to a claim of fraud, the Court must still read plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404

U.S. 519, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972), and accept plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33, 112 S. Ct. 1728, 118 L. Ed. 2d 340 (1992); *Erickson*, 551 U.S. at 93–94 (The Court of Appeals improperly departed "from the liberal pleading standards set forth by Rule 8(a)(2)" and failed to liberally construe" the *pro se* complaint at issue.).

Generally if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56. However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see also Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (noting that the Sixth Circuit has "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to h[is] claim'") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir.1993)). "[I]n general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of*

21

*Columbus*, 123 Fed. Appx. 694, 697 (6th Cir. 2005).

B.   *Heck v. Humphrey*

Although not briefed by the parties, the doctrine set forth in *Heck v. Humphrey* prevents the court from recognizing plaintiff's constitutional claims based on 42 U.S.C. § 1983 against defendants Spivey, Evans, Youkins, Rubitshum or Smith because plaintiff has not achieved a favorable termination of the criminal prosecution.  *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010).  The *Heck v. Humphrey* doctrine is applicable and requires the following:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010), citing, *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).  In *Heck*, the Supreme Court stated that actions premised on § 1983 require the final adjudication of the criminal proceeding to be decided in the favor of the accused in order to prevent the possibility of contradictory resolutions of a claimant from succeeding in a tort action, yet being convicted in the criminal action.  *Heck*, 512 U.S. at 484.  Essentially, "a claim of damages bearing that relationship to a conviction or sentence [that] has not been

so invalidated is not cognizable under § 1983.  *Id*. at 487.  The *Heck* doctrine

requires that the § 1983 action must not be an attempt to invalidate the prior

conviction whereby the court must look to the claims raised by the § 1983 action

and the specific offenses for which the § 1983 claimant was convicted, and not to

the set of comparable facts between the § 1983 claim and the conviction.

*Schreiber*, 596 F.3d at 334, referencing, *Swiecicki v. Delgado*, 463 F.3d 489, 493

(6th Cir. 2006).

The United States Supreme Court has affirmed that "a state prisoner's

§ 1983 action is barred (absent prior invalidation)-no matter the relief sought

(damages or equitable relief), no matter the target of the prisoner's suit (state

conduct leading to conviction or internal prison proceedings)-if success in that

action would necessarily demonstrate the invalidity of confinement or its

duration."  *Goss v. Brown*, No. 5:06 CV 13887, 2006 WL 2711813, at *2 (E.D.

Mich. Sept. 19, 2006) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 125 S. Ct. 1242,

1248 (2005)).

In *Morris v. City of Detroit*, 211 Fed.Appx. 409, 410-11 (6th Cir. 2006), the

Sixth Circuit rejected a claim attacking the constitutionality of the criminal

investigation on which a conviction was based:

> A finding that his confession was impermissibly coerced,
> as would be necessary to establish damages in a § 1983
> action, would correspondingly demonstrate the invalidity

> of the accessory-after-the fact adjudication and
> associated sentence of probation, in contravention of
> *Heck*. *See id*. at 481-82, 487. This court has held that a
> challenge to a criminal investigation that led to a
> conviction necessarily challenges the validity of the
> conviction, and therefore falls within the *Heck*
> framework. *See Dusenbery v. Graves*, No. 97-4387,
> 1999 U.S. App. LEXIS 19452, 1999 WL 617932, *1 (6th
> Cir. Aug. 12, 1999).

*Morris*, 211 Fed. Appx. at 410-11.  Likewise, in *Goss v. Brown*, No. 06-13887,

2006 WL 2711813 (E.D. Mich. Sept. 19, 2006), the district court dismissed

plaintiff's § 1983 complaint against his parole agent, parole supervisor, and

MDOC corrections director where plaintiff alleged that defendants had submitted

a false parole violation report, and that the parole board had relied on that report

when it issued its decision to revoke plaintiff's parole.  *Id.* at *2.  The district court

determined that plaintiff failed to allege facts to show that the parole board relied

upon false information in issuing its revocation decision, and, in fact, the alleged

facts showed the opposite was true.  *Id.*  Moreover, plaintiff failed to show that the

alleged constitutional violation was intentional.  An "injury caused by negligence

does not constitute a deprivation of any constitutionally-protected interest and a

claim that officials have engaged in negligent conduct does not state a claim under

§ 1983.  *See Collins v. City of Harker Hgts*., 503 U.S. 115, 127-28 (1992);

*Lewellen v. Metropolitan Gov't. of Nashville & Davidson Co. Tenn*., 34 F.3d 345,

348 (6th Cir.1994) (ruling that even gross negligence is not actionable under

§ 1983, because it is not arbitrary in the constitutional sense). Plaintiff does not set forth facts indicating that the defendants' conduct was intentional in the constitutional sense." *Goss v. Brown*, No. 5:06 CV 13887, 2006 WL 2711813, at *2 (E.D. Mich. Sept. 19, 2006).

In essence, plaintiff is challenging the role that defendants Spivey, Evans, Youkins, Rubitshum and Smith played in his "continuing confinement" based upon defendants' "unconstitutional" actions; however, this fails to state a claim upon which relief can be granted. Here, there has been no final adjudication of plaintiff's criminal sexual conduct proceeding that has been decided in plaintiff's favor. As such, plaintiff's claims are not properly recognized under 42 U.S.C. § 1983; *see Heck*, 512, U.S. at 486-87. For these reasons, the undersigned recommends the dismissal of these defendants.

C.   <u>Sovereign Immunity</u>

All defendants claim that they are entitled to sovereign immunity. Plaintiff has asserted § 1983 claims against all defendants in both their official and individual capacities. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th

Cir. 2004). A suit against a state officer or employee in his or her official capacity

is simply another way of pleading an action against the state. *See Will v. Michigan*

*Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d

675, 691 (6th Cir. 2012). Thus, the Eleventh Amendment also bars actions for

monetary damages against state employees, such as defendants here, in their

official capacities. *Will*, 491 U.S. at 71. Given these facts, the court concludes that

plaintiff's § 1983 claims against all defendants in their official capacities should

be dismissed with prejudice.

> D.    Statute of Limitations - § 1983 Actions

Because Congress did not specifically adopt a statute of limitations

governing § 1983 actions, "federal courts must borrow the statute of limitations

governing personal injury actions in the state in which the section 1983 action was

brought." *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003), *citing*

*Wilson v. Garcia*, 471 U.S. 261, 275-276 (1985). The Sixth Circuit has held that

the "appropriate statute of limitations to be borrowed for § 1983 actions arising in

Michigan is the state's three-year limitations period for personal injury claims."

*Drake v. City of Detroit, Michigan*, 266 Fed. Appx. 444, 448 (6th Cir. 2008),

*citing* Mich. Comp. Laws § 600.5805(10); *Chippewa Trading Co. v. Cox*, 365

F.3d 538, 543 (6th Cir. 2004); *see also Owens v. Okure*, 488 U.S. 235, 249–250,

109 S. Ct. 573, 102 L. Ed. 2d 594 (1989) (Where "state law provides multiple

statutes of limitation for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions.").

The characterization of a claim, including the determination of when the cause of action accrued, is determined by federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *see also LRL Prop. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1107 (6th Cir. 1995) (While statutes of limitations and tolling principles are governed by state law, the question of when a federal civil rights claim accrues remains one of federal law.). The statute of limitations begins to run under federal law "when plaintiffs knew or should have known of the injury which forms the basis of their claims." *Ruff v. Runyon*, 258 F.3d 498, 500 (6th Cir. 2001). "In determining when the cause of action accrues in section 1983 actions, [courts] have looked to what event should have alerted the typical lay person to protect his or her rights." *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997).

In this case, plaintiff alleges § 1983 claims against defendants Spivey, Evans, Youkins and Rubitshum arising from events that occurred between April 2004 and May 2, 2005. According to plaintiff, in April 2004, John Rubitshum signed a form approving a special condition of parole requiring plaintiff to attend sex offender therapy. (*Id.* at 227). Probation officer Spivey authored a false parole revocation report on April 22, 2005. (*Id.* at 221). Parole officer Cheryl

27

Evans prepared a supplemental parole violation report on April 27, 2005, but failed to serve it on plaintiff within the 5-day period set forth in policy. (*Id.* at 225). Deputy director of field administration, Joan Youkins, issued a parole violation warrant without an identification code on May 2, 2005. (*Id.* at 226). Regardless of the constitutional theory under which plaintiff's claims are pursued, they all began to accrue no later than May 2, 2005, according to the plain and clear allegations set forth in the Amended Complaint. All of plaintiff's claims expired under the statute of limitations approximately six years before he filed his complaint on May 19, 2014. Thus, absent the application of equitable tolling, plaintiff's claims are barred by the statute of limitations.

Plaintiff asks this court to construe the time that he went back to prison as a "concurrent" sentence and argues that until he completes his sentence, his time to file an action in federal court is not time-barred. Plaintiff was re-paroled on May 18, 2011, and filed this lawsuit on May 19, 2014. Despite filing this lawsuit one-day late, plaintiff claims that he mailed the lawsuit before the time for limitations had passed.

It is well-settled that "[i]ncarceration is no longer a basis for tolling the statute of limitations. Mich. Comp. Laws § 600.5851(9), (10) (effective April 1, 1994)." *Stafford v. Vaughn*, 173 F.3d 430 (6th Cir. 1999). Plaintiff cites *Arkin v. Jones*, however, nothing in *Arkin* alters the rule that incarceration does not toll the

limitations period.  792 N.W.2d 772 (Mich. 2010).  Moreover, even if plaintiff's

argument was correct, he still did not timely file the original complaint by May 18,

2014.  Plaintiff was aware of his alleged injuries at the time that they occurred and

yet he waited over six years to bring his claims.  For statute of limitations purposes

the focus is on the alleged illegal acts and not on the time at which the

consequences of those acts become most painful.  *See Chardon v. Fernandez*, 454

U.S. 6, 8 (1981).  For these reasons, the undersigned also recommends that the

claims against defendants Spivey, Evans, Youkins and Rubitshum's be dismissed

as time-barred.

     E.    <u>Personal Involvement</u>

     Defendant Ryan Smith also argues that plaintiff's Amended Complaint fails

to allege that he was personally involved in any unconstitutional conduct and thus

the Amended Complaint fails to state a claim upon which relief can be granted.

Plaintiff admits in his Amended Complaint that although Smith's name was typed

on his parole violation report, he later learned that "there was no Ryan P. Smith as

Parole Supervisor . . . at the time of this incident."  (Dkt. 18, at 22).  Smith claims

that plaintiff has not made any factual allegations showing Smith's personal

involvement in the complained-of-facts.  As a result, Smith asked to be dismissed.

     To prevail on a § 1983 claim, a plaintiff must show personal involvement by

the defendant in the constitutional violation.  *Monell v. Dep't of Soc. Serv.*, 436

U.S. 658, 691–92 (1978); *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 80–81

(6th Cir. 1995) (plaintiff must allege facts showing that the defendant participated,

condoned, encouraged, or knowingly acquiesced in alleged misconduct to

establish liability). A claimed constitutional violation must be based upon active

unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008);

*see also Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under

§ 1983 must be based on active unconstitutional behavior and cannot be based

upon 'a mere failure to act.'").

Here, plaintiff only alleges that Smith's name is typed onto the CFJ 110

parole violation report, where he claims that Tanzi Tabb or Kyra Bennett's name

should have been. (Dkt. 18, at 234). Importantly, plaintiff does not allege that

Smith made this error and, in fact, later alleges that there was no Ryan Smith

serving as a parole supervisor at the time of this incident. (*Id.*) The undersigned

finds that these allegations are simply not enough to show that Smith actively

participated in a constitutional violation. *See Monell*, 436 U.S. at 691-692. For

these reasons, the undersigned recommends the dismissal of defendant Smith.

F.    Exhaustion of Administrative Remedies

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other Federal

law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted."  Section 1997e(a)'s

"exhaustion requirement applies to all prisoners seeking redress for prison

circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520 (2002).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at

532.  In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure

to exhaust is an affirmative defense under the PLRA," and "inmates are not

required to specially plead or demonstrate exhaustion in their complaints." *Jones*,

549 U.S. at 216.  "Compliance with prison grievance procedures . . . is all that is

required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.  "Congress

has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms

of relief sought and offered through administrative avenues." *Booth v. Churner*,

532 U.S. 731, 741 n.6 (2001). "[P]roper exhaustion of administrative remedies is

necessary."  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

     In *Jones v. Bock*, the Supreme Court also held that the burden rests on the

defendant to show that a plaintiff failed to exhaust when asserting exhaustion as

an affirmative defense.  *Id.* Accordingly, exhaustion is satisfied if plaintiff

complied with the applicable MDOC grievance procedure and defendants bear the

burden of showing otherwise.  *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th

Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading

and proving exhaustion; rather, this affirmative defense may serve as a basis for

dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher

hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby*

*County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party

has the burden-the plaintiff on a claim for relief of the defendant on an affirmative

defense-his showing must be sufficient for the court to hold that no reasonable

trier of fact could find other than for the moving party." *Calderone v. United*

*States*, 799 F.2d 254, 259 (6th Cir.1986). The Sixth Circuit has repeatedly

emphasized that the party with the burden of proof "must show the record contains

evidence satisfying the burden of persuasion and that the evidence is so powerful

that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances"

(effective date 07/09/2007) governs plaintiff's claims here. That policy states, in

relevant part:

> E.    Grievances may be submitted regarding alleged
>        violations of policy or procedure or unsatisfactory
>        conditions of confinement which directly affect
>        the grievant, including alleged violations of this
>        policy and related procedures.

\* \* \*

P.  Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her normal control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.

\* \* \*

R.  A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

\* \* \*

V.  Within five business days after attempting to resolve a grievable issue with staff, a grievant may send a completed Prisoner/Parolee Grievance form (CSJ-247A) to the Step I Grievance Coordinator designated for the facility, field office or other office being grieved. . . .

33

Defendants Huges and Bennett maintain that the facts surrounding plaintiff's allegations against them arise after 2010, and that defendant has not submitted a step III grievance in accordance with MDOC policy.  In support, defendants attach a certified record of plaintiff's MDOC prisoner step III grievance report which certifies that plaintiff has not filed any step III grievances since October 22, 2010.  (Dkt. 62-3).  Plaintiff has not responded to defendants' argument on this point.  The undersigned concludes that defendants have met their burden in this case of showing that plaintiff has not exhausted his burden of exhausting his administrative remedies as to defendants Huges and Bennett. Defendants introduced a certified MDOC grievance report that showed that plaintiff had not filed a step III grievance since 2010, yet his claims against defendants Huges and Bennett as alleged in the Amended Complaint occurred after that time.  For these reasons, the undersigned recommends that Huges and Bennett are entitled to summary judgment on the basis of exhaustion.

## V.    RECOMMENDATIONS

For the reasons set forth above, the undersigned **RECOMMENDS** that the MDOC defendants' (the Michigan Department of Corrections, Michele Spivey and Cheryl Evans) motion to dismiss (Dkt. 45) be **GRANTED**, that defendants Kyra Bennett, Michael Huges, John Rubitshum, and Ryan Smith's motion to dismiss or alternatively for summary judgment (Dkt. 62) be **GRANTED**, and that

34

Joan Youkins' motion to dismiss (Dkt. 74) be **GRANTED**.

The undersigned further recommends that the MDOC defendants (the Michigan Department of Corrections, Michele Spivey and Cheryl Evans), Kyra Bennett, Michael Huges, John Rubitshum, Ryan Smith, and Joan Youkins be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: July 29, 2015                          s/Michael Hluchaniuk
                                             Michael Hluchaniuk
                                             United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 29, 2015, I electronically filed the foregoing paper with
the Clerk of the Court using the ECF system, which will send electronic
notification to all counsel of record, and I certify that I have mailed by United
States Postal Service the foregoing pleading to the following non-ECF participant,
at the following address: Christopher Robinson #206760, Carson City
Correctional Facility, 10274 Boyer Road, Carson City, MI 48811.

                                     s/Tammy Hallwood
                                     Case Manager
                                     (810) 341-7887
                                     tammy_hallwood@mied.uscourts.gov